

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JJD:JLG
F. # 2018R02050

*610 Federal Plaza*
*Central Islip, New York 11722*

May 10, 2019

By ECF

The Honorable Joseph F. Bianco
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Ronald DeRisi, 19 Cr. 090 (JFB)

Dear Judge Bianco:

      The Government respectfully submits this letter in connection with the sentencing of defendant Ronald DeRisi (the "defendant"), presently scheduled for May 2019 before Your Honor, and in response both to the defendant's sentencing submissions dated April 29, 2019 and May 6, 2019 (the "Def. Ltrs."), and to the United States Probation Office's ("Probation Office") Presentence Investigation Report ("PSR") dated April 25, 2019.

      The defendant has a stipulated United States Sentencing Guidelines ("Guidelines") range of 27 to 33 months' imprisonment, pursuant to his plea agreement. The PSR, however, calculates the defendant's Guidelines range to be 12 to 18 months' imprisonment, and furthermore, recommends a below-Guidelines sentence of time served, plus a $1,000 fine. The Government objects to the Guidelines range calculated by the Probation Office, and respectfully requests that the Court impose a sentence within the applicable Guidelines range of 27 to 33 months, which appropriately captures the defendant's criminal history – including his multiple prior convictions for aggravated harassment – and his similar conduct in this very serious threat case.

Background

      Approximately seven months ago, the United States Capitol Police ("USCP"), Investigations Division, Threat Assessment Section, began investigating a series of anonymous threats left as telephonic voice-messages for two sitting United States Senators, whose identities are known to the government (hereinafter, "Senator-1" and "Senator-2"), both of whom were publicly supporting the nomination and confirmation of then-Judge Brett

Kavanaugh to the United States Supreme Court, and ultimately voted to confirm the Justice on October 6, 2018. *See* PSR ¶¶ 3-4.

Over a period of approximately three weeks, beginning on or about September 27, 2018, and continuing through on or about October 19, 2018 – the date of the defendant's arrest in this case – the defendant left approximately twelve threatening voice-messages for two United States Senators.

With respect to Senator-1, the defendant made explicit, unequivocal threats to murder him/her, by shooting Senator-1 in the side of his/her head with a 9mm firearm. In one voice-message recorded on September 27, 2018, the defendant stated, in substance and in part, that he had a "present" for Senator-1, specifically: "It's a nine millimeter. Side of your fucking skull, you scumbag motherfucker." The defendant concluded with "Yeah, Kavanaugh – I don't think so." *See* PSR ¶ 6. Approximately 45 minutes later on that same day, the defendant left another voice-message for Senator-1, calling Senator-1 "a dead man," and stating, again: "Nine millimeter, side of the fucking head!" *See* PSR ¶ 7.

With respect to Senator-2, the defendant left multiple threatening and harassing voice-messages, in which he made clear that he knew Senator-2's home address – he, in fact, read the full address into two of the recorded voice-messages, *see* PSR ¶¶ 9, 13 – and stated, in substance, that he was "gonna get" Senator-2; that he would "be in touch, see ya soon, see ya soon;" and, emphasizing the imminent temporal nature of his threats, made the ticking sound of a clock: "tick-tock, tick-tock, tick-tock." *See* PSR ¶¶ 10, 11, 13.

A review of telephone toll records revealed that the defendant made numerous additional calls to the two Senators, as well as to Justice Kavanaugh directly, but did not leave voice-messages on these occasions. *See* PSR ¶ 15. The defendant, who used a prepaid cellular telephone to place these calls (in attempts to ensure that no subscriber information would reveal the caller), and gave a fictitious name in some of the calls, including in conversations with Congressional staffers, was ultimately identified by the payment method – a debit card – used to replenish the prepaid phone minutes. *See* PSR ¶ 15. His identity was further confirmed by cellsite records, which indicated that the calls to the Senators had been placed from at or in the vicinity of the defendant's home in Smithtown, New York; and by a vocal comparison, made between the voice on the recorded messages to the Senators and a voice confirmed to be the defendant's on threatening messages left for another victim three years ago (as further discussed herein).

On October 18, 2018, the defendant was charged in a sealed, single-count Complaint, captioned 18-MJ-998, with threatening to assault and murder United States officials, in violation of Title 18, United States Code, Section 115(a)(1)(B). He was arrested by agents of the USCP the following day, at his home in Smithtown. *See* PSR ¶ 16. During the execution of a federally-authorized search and seizure warrant, law enforcement agents recovered, *inter alia*, the prepaid cellular telephone used to make the calls to the Senators, as well as multiple rounds of live ammunition of various calibers, including 9mm ammunition. The defendant also admitted, in a *Mirandized* post-arrest statement, that he had made the

threatening calls to the Senators, and that he had possessed multiple firearms, which he had only recently given to his son.

The defendant was presented and arraigned on the charge contained in the Complaint on October 19, 2018 before Magistrate Judge Gary R. Brown. He was ultimately ordered detained pending trial. At the request of his then-counsel, the Court ordered that a psychiatric or psychological examination be conducted on the defendant, pursuant to 18 U.S.C. §§ 4241 and 4247. That forensic examination and evaluation was conducted at the Federal Medical Center ("FMC"), Devens, Massachusetts, beginning in or about December 2018 and concluding in or about February 2019. As detailed in a forensic report dated March 8, 2019, which has been filed with the Court, a Forensic Psychologist at FMC Devens found the defendant to be competent, able to understand the nature and consequences of the proceedings against him, and able to assist properly in his defense.

On February 28, 2019, the defendant waived Indictment, and plead guilty before this Court, pursuant to the terms of a plea agreement with the government, to a single-count felony Information, which was filed that same day, charging him with threatening to assault and murder United States officials, in violation of Title 18, United States Code, Section 115(a)(1)(B). The plea agreement executed by the parties contained a stipulated Guidelines range of 27 to 33 months' imprisonment, and included the specific forfeiture of the defendant's firearms[1] and ammunition. Sentencing was expedited, and set for May 2, 2019.

## The PSR

The PSR calculates the defendant's criminal history score to be two points, placing the defendant in Criminal History Category II. PSR ¶¶ 33-44. The government has no objection to Probation's calculation of the defendant's criminal history, which is similarly reflected in the plea agreement.

The PSR calculates the defendant's total offense level to be 12, based upon: *(1)* a base offense level of 12, pursuant to U.S.S.G. § 2A6.1(a)(1) (PSR ¶ 24); *(2)* a two-level assessment, because the offense involved more than two threats, pursuant to U.S.S.G. § 2A6.1(b)(2)(A) (PSR ¶ 25); and *(3)* the defendant's acceptance of responsibility, resulting in a two-level decrease, pursuant to U.S.S.G. § 3E1.1(a) (PSR ¶ 31). The government objects to this calculation, which fails to include an applicable 6-level assessment, pursuant to U.S.S.G. § 2A6.1(b)(1), for conduct evidencing an intent to carry out the threat (as discussed further, below). The government also intends to credit the defendant with the additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), for his timely acceptance of responsibility.

As calculated in the plea agreement, and stipulated to by the parties, based on an adjusted total offense level of 17, and a Criminal History Category of II, the defendant's

---

[1] The defendant's son has surrendered the defendant's firearms in his possession, in satisfaction of the forfeiture component of the plea agreement.

advisory Guidelines range is 27 to 33 months' imprisonment. The defendant has served approximately seven months' imprisonment to date. The PSR, which calculates the defendant's advisory Guidelines range to be 12 to 18 months' imprisonment (PSR ¶ 86), recommends a time-served sentence for the defendant, in addition to a $1,000 fine, and two years' supervised release.

The defendant also seeks a time-served sentence, in line with the Probation Office's recommendation (Def. Ltr. 05/06/19 at 1-2), in light of the defendant's indisputably quick acceptance of responsibility, and his significant medical issues, including his severe post-surgery back pain.

Discussion

A. Applicable Law

The Sentencing Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range;" that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

B. The Guidelines Enhancement Under U.S.S.G. § 2A6.1(b)(1) Is Applicable

The Guidelines provide for a six-level enhancement where "the offense involved any conduct evidencing an intent to carry out [the] threat." U.S.S.G. § 2A6.1(b)(1). This enhancement clearly applies in this case. The Second Circuit has emphasized the broad

4

language in this Guideline. *See United States* v. *Ware*, 386 F. App'x 10, 11 (2d Cir. 2010) (noting that it applies when the offense involves "*any* conduct" evidencing an intent to carry out the threat (emphasis in original)). Moreover, the Court need only be persuaded that it is "more likely than not" that the Guideline applies. *Id.*; *United States* v. *Awan*, 607 F.3d 306, 312 (2d Cir. 2010) ("When finding facts relevant to sentencing for Guidelines calculation purposes, the district court [is] required to use the preponderance of the evidence standard." (alteration in original; internal quotation marks omitted)).[2]

The Second Circuit has repeatedly held that this enhancement applies where there is evidence – again, proven by a preponderance standard – that the defendant not only made threats, but also possessed or attempted to obtain a firearm or ammunition. *See, e.g.*, *United States* v. *Kirsh*, 54 F.3d 1062, 1073 (2d Cir. 1995) (upholding § 2A6.1(b)(1) enhancement where district court inferred requisite intent from defendants' purchase of firearms and attempted purchase of ammunition); *accord United States* v. *Carter*, 111 F.3d 509, 513-14 (7th Cir. 1997) (rejecting § 2A6.1(b)(1) challenge by defendant who had made no travel plans to victim's location but who possessed semi-automatic pistol and ammunition, and who had history of abusing recipient of threats (citing *Kirsh* )); *Ware*, 386 F. App'x at 11 ("after threatening to kill his ex-girlfriend with a firearm and boasting about his possession of hollow point bullets, Ware was arrested in possession of a loaded firearm and the type of bullets referenced in his threats"). The Second Circuit has also upheld the applicability of this enhancement without any evidence suggesting that the defendant traveled, or even attempted or planned to travel, to the victim's location in order to carry out the threat. *See Ware*, 386 F. App'x at 11 (enhancement applied in connection with threatening interstate communications, despite the fact that nothing in the record suggested that the defendant had made any plans to travel from one state to another to carry out his threats); *Carter*, 111 F.3d at 513-14. Conversely, the Second Circuit has held that this enhancement may apply even where the evidence of a firearm is lacking, but where there is other evidence of concrete actions taken by the defendant in furtherance of his threat. *See, e.g.*, *United States* v. *Berndt*, 127 F.3d 251, 259 (2d Cir. 1997) (defendant traveled to the victim).

The government, therefore, respectfully disagrees with the Probation Office, and submits that there is sufficient evidence in the record from which this Court can find by a preponderance of the evidence that the defendant's crime involved "*any* conduct" evidencing an intent to carry out his threats to the Senators. *First*, at the time of the defendant's arrest in this matter, he was in possession of live ammunition, including several rounds of 9mm ammunition – the same caliber of the gun he threatened to put at the "side of [Senator-1's] skull." This ammunition, moreover, was not locked away in the defendant's basement; rather, it was found in the same area of the defendant's home in which he kept his wallet,

---

[2] The Second Circuit reviews resulting questions of interpretation of the Sentencing Guidelines *de novo*, *United States* v. *Meskini*, 319 F.3d 88, 91 (2d Cir. 2003), and applies the clear error standard when evaluating a district court's findings of fact. *United States* v. *Salim*, 549 F.3d 67, 72 (2d Cir. 2008).

5

keys, and medications – items he would tend to reach for on a daily basis.  *Second*, the defendant took significant steps to hide his true identity as the person making the threats, not only from the Senators themselves, but also from his family.  He used a fictitious name when speaking with the Senators' staffers, and the calls themselves were made from a prepaid "burner" cellphone that the defendant hid in his car.  There was no subscriber information (*e.g.*, name, billing address, or e-mail address) tied to the cellphone number, and the defendant replenished the phone's minutes with a debit card that was not connected to any of his other credit card accounts.  This defendant did not want to be identified and caught; he was not sending a message as a member of the voting public, but rather, he wanted the freedom to continue to do what he intended to do.  *Third*, the defendant specifically researched and sought out the Senator's home addresses and personal telephone numbers.  He did not limit himself to calling their offices or knowing their office addresses.  He dug deeper, to learn the locations where they would be most vulnerable.  As in *Ware* and *Carter*, discussed above, although there is no evidence in the record that this defendant made travel plans to Washington, D.C. or to either of the Senators' home states, the record before this Court is replete with conduct evidencing an intent to carry out his threats to the Senators, thereby mandating the six-level enhancement.

  C.  A Guidelines Range Sentence Is Appropriate

  The factors set forth in 18 U.S.C. § 3553(a) weigh heavily in favor of a Guidelines-range sentence for this defendant.

  The defendant's crime is extremely serious.  He explicitly threatened two elected officials with death and violence for simply doing their jobs.  The defendant chose to express his political views and his dissatisfaction with the nomination and confirmation process of a sitting federal judge to the high court by trying to intimidate, frighten, and harass the Senators who were a part of the process.  His persistent calls – including hang-ups, demands made to their staffers, and the recorded incendiary voice-messages – were all the more concerning when it became clear that the defendant had tracked down the Senators' home addresses and telephone numbers.  The use of threats of violence, by this defendant or others, in order to prevail in political disputes in this country cannot be tolerated, and should be appropriately punished.

  The defendant's criminal history reveals that he has never been deterred by his past brushes with the law, even with respect to criminal activity that is nearly identical in nature to the instant offense, and which he has engaged in for decades.  He has five prior convictions for harassment/aggravated harassment dating back to 1984, most of which involve the defendant making threatening phone calls to the victims, among other concerning conduct.  *See* PSR ¶¶ 34, 35, 36, 37, 41.  In 1989, for example, the defendant made multiple "hang up phone calls" from his residence to a victim, and received as his sentence a conditional discharge, plus a $100 fine.  PSR ¶ 36.  Three months after sentence was imposed in that case, the defendant was arrested again, for making numerous harassing phone calls in violation of an order of protection.  PSR ¶ 37.  He again received a conditional discharge.  *Id*.  The defendant's most recent conviction for aggravated harassment,

6

referenced above (with respect to the voice exemplar used in the instant case), was in February 2015, during which time the defendant left multiple voice-messages for a victim, threatening to "end his life." PSR ¶ 41. Again, the defendant received a sentence of a conditional discharge. *Id*. Moreover, for nearly one year – overlapping with the timeframe of the defendant's calls to the two Senators – the defendant also made multiple threatening calls to his surgeon and to members of his surgeon's family, in which the defendant falsely identified himself as a police detective, and threatened the surgeon with a "bullet in the head" and "assassination." PSR ¶ 45. Had this defendant not been identified and arrested in October, there is no indication that anything would have stopped him from repeatedly threatening the Senators, or his surgeon.

The lenient sentences this defendant has received, repeatedly, in the past have done absolutely nothing to deter him from continuing to harass and threaten people when he feels frustrated or disgruntled. A sentence of time served, as recommended by the Probation Office and as requested by the defendant, would do exactly the same thing. The need for the sentence imposed here to provide for specific deterrence weighs heavily in favor of a significant sentence, certainly well beyond the sentences the defendant has been given in the past. *See* 18 U.S.C. § 3553(a)(2)(B). Furthermore, it is critically important for the Court's sentence to send a clear message to others, that threatening public officials for carrying out their duties results in weighty consequences. A sentence of time served would not only trivialize this criminal conduct, but would serve as meager deterrence.

## Conclusion

Given all of the foregoing, the Government respectfully requests that the Court impose a sentence within the stipulated Guidelines range of 27 to 33 months' imprisonment – a sentence that is sufficient but not greater than necessary to serve the legitimate purposes of sentencing, including and especially: to reflect the seriousness of the offense; promote respect for the law; protect the public from further crimes of this defendant; and, perhaps most importantly here, afford adequate deterrence, both general and specific.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/ Justina L. Geraci
       Justina L. Geraci
       Assistant U.S. Attorney
       (631) 715-7835

cc:   Martin Geduldig, Esq. (via electronic mail)
       Jared A. Maneggio, U.S. Probation Officer (via electronic mail)